4          DISTRICT COURT OF GUAM

5          TERRITORY OF GUAM

6

7    AMY HILL, as Personal Representative of        )      CIVIL CASE NO. CV 15-00025
     the Estate of DAVID HILL, deceased, and       )
8    in Amy Hill's capacity as an individual,       )
                                                    )
9          Plaintiff,                               )
                                                    )      **REPORT AND RECOMMENDATION**
10         vs.                                      )      re Defendants' Motion to Dismiss
                                                    )      [Fed. R. Civ. P. 12(b) and Forum Non
11   ASSURANCEFORENINGEN SKULD                      )      Conviens], or in the Alternative, to
     (Gjensidig) and SKULD Mutual Protection        )      Compel Arbitration [9 U.S.C. § 206]
12   and Indemnity Association (Bermuda) Ltd.       )
                                                    )
13         Defendants.                              )
                                                    )
14   _____       )

15         Before the court is a motion filed by defendants Assuranceforeningen Skuld (Gjensidig) and

16   Skuld Mutual Protection and Indemnity Association (Bermuda) Ltd. (collectively, the "Defendants")

17   to dismiss Plaintiff's Complaint filed herein on August 6, 2015. *See* ECF No. 23. The motion was

18   referred to the undersigned on December 21, 2015, for a Report and Recommendation. *See* ECF

19   No. 44. The court set the motion for hearing on January 14, 2016 but continued the hearing to

20   January 28, 2016. On the continued hearing date, the court heard oral arguments from the parties

21   and took the matter under advisement.

22         The court, having reviewed Defendants' motion to dismiss Plaintiff's Complaint, Plaintiff's

23   opposition to the motion, and Defendants' reply to the opposition, now renders its decision in this

24   Report and Recommendation.[1]

25   _____

26         [1] The court concurs with the Defendants' objections and has decided it will not consider the
     Responses to Court's Questions and the Supplemental Declaration of Mona Eivindsen, which were
27   filed after the January 28th motion hearing. *See* ECF Nos. 63-64. The court has not taken judicial
     notice of any facts other than those raised in the Complaint and the pleadings related to the instant
28   Motion to Dismiss.

1

## BACKGROUND

2    On August 6, 2015, Plaintiff filed her complaint against Defendants seeking to recover a

3    multi-million dollar judgment[2] that remained unpaid because the judgment debtor's insurance

4    company (Defendants) refused to pay the claim or post any security to adequately stay execution

5    of the judgment. _See_ Compl. at ¶1, ECF No. 1.

6    Defendants have moved the court to dismiss the Complaint. _See_ ECF No. 23. In support of

7    the motion, Defendants provided the Declaration of Jonathan Hare, ECF No. 25; the Declaration

8    of Gaute Gjelsten, ECF No. 26; the Declaration of Mona Eivindsen, ECF NO. 27; the Declaration

9    of Kristoffer Kohmann, ECF No. 28; and the Declaration of Elyze Iriarte, ECF No. 29. Plaintiff filed

10   her opposition to the motion to dismiss on November 26, 2015. _See_ ECF No. 39. Defendants filed

11   their reply to the opposition on December 15, 2015. _See_ ECF No. 41.

12   Defendants raise the following arguments in support of their motion to dismiss:

13   A. Dismissal is warranted under Fed. R. Civ. P. 12(b)(5) because Plaintiff's service of

14   process upon the Director of the Department of Revenue and Taxation ("DRT") and Attorney Iriarte

15   did not constitute proper service upon the Defendants;

16

---

17   [2] On April 6, 2015, in Civil Case No. 11-00034, Plaintiff received a jury verdict against
18   defendant, Majestic Blue Fisheries, LLC, ("Majestic Blue") in the sum of $3,205,795.00 with
     interest thereon, for the loss of the life of Plaintiff's husband who was on board the Majestic Blue
19   when it sank on June 10, 2010 in the Western Pacific Ocean. An Amended Judgment was entered
     on the docket on June 30, 2015. On July 29, 2015, the Majestic Blue appealed the judgment to the
20   Ninth Circuit Court of Appeals. The case remains pending on appeal.
21   Prior to its judgment against Majestic Blue in CV11-00034, Plaintiff was also involved in
     another action before this court. In CV11-00032, Majestic Blue sought exoneration from or to limit
22   its liability under the Limitations Act for losses incurred when the Majestic Blue sank. Majestic
     Blue alleged that the total value of its interest in the vessel did not exceed the sum of $33,500, which
23   represented the value of the main skiff and life jackets as the Majestic Blue sank with all its
     appurtenances and equipment in the Western Pacific and was not recovered. Plaintiff opposed the
24   petition. In its Findings of Fact and Conclusions of Law, the court denied Majestic Blue's petition
25   to limit its liability under the Limitations Act. A Clerk's Judgment was entered on July 28, 2014.
     On August 19, 2014, Majestic Blue appealed the Judgment to the Ninth Circuit Court of Appeals.
26   On April 24, 2015, Assuranceforengen Skuld, a defendant herein, filed a letter of undertaking as
     security for the judgment of taxable costs filed in the case. To date, CV11-00032 remains pending
27   on appeal.
28   The undersigned presided over both cases.

1   B.  Dismissal is warranted under Fed. R. Civ. P. 12(b)(2) because the court does not have

2   personal jurisdiction – whether general or specific – over Defendants;

3   C.  Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state

4   a claim against them under Guam's Direct Action statute;

5   D.  The Complaint should be dismissed under the doctrine of *forum non conveniens*; and

6   E.  Dismissal is warranted because the laws of Guam and the New York Convention require

7   the Plaintiff to arbitrate her claims against Defendants in Norway.

8   **LEGAL STANDARDS AND ANALYSIS**

9   **A.    Rule 12(b)(5) - Whether Defendants were properly served.**

10   Rule 12(b)(5) allows a party to move for dismissal of an action for insufficient service of

11   process. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid

12   under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If the plaintiff is unable to

13   satisfy its burden of demonstrating effective service, the court has discretion to either dismiss or

14   retain the action. *See Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). The

15   court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion. *See Alphin*

16   *v. Peter K. Fitness, LLC*, No. 13-CV-01338-BLF, 2014 WL 2961088, *2 (N.D. Cal., Mar. 24, 2015)

17   ("When factual issues exist, courts may hear evidence outside of the pleadings, including affidavits

18   and depositions, in order to determine the facts."). The issue before the court is whether Defendants

19   had been properly served with process.

20   With respect to corporations, service of process may be effectuated by delivering a copy of

21   the summons and complaint in a judicial district to "an officer, a managing or general agent, or to

22   any other agent authorized by appointment or by law to receive service of process" or an

23   internationally agreed method for effective service such a the Hague Convention if service of process

24   is at a place not within any judicial district of the United States. Fed. R. Civ. P. 4(h). It is

25   Defendants' position herein that service can only be proper against Defendants if it complies with

26   the Hague Convention.

27   In this case, Plaintiff contends that service was proper because she served a copy of the

28   summons and complaint on John P. Camacho, the Director of the Department of Revenue and

1   Taxation ("DRT") and on Elyze Iriarte.

2        Plaintiff contends that service upon the Director of DRT was proper because the DRT
3   Director is an agent authorized by Guam law to receive service of process on behalf of foreign
4   corporations that transact business in Guam.  Plaintiff cites to Title 18, Guam Annotated Code,
5   Section 7113(e) for this proposition.  A foreign corporation which transacts business in Guam
6   without having been authorized to transact business on Guam submits itself to the jurisdiction of the
7   courts of Guam and further designates the DRT Director as its agent for service of process.
8   Plaintiff asserts that Skuld did business in Guam when it issued a policy of insurance in Guam, to
9   a business with its principal place of business on Guam that has its headquarters in Guam, that
10  operated a fishing vessel in and out of Guam with a fishing vessel home ported in Guam.

11       Section 7102(a) of Title 11, Guam Code Annotated provides that a foreign corporation shall
12  not transact business in Guam until it obtains a business license and a certificate of authority to do
13  so from the DRT Director.  Similarly, 11 GCA § 70130 requires all persons "engaging in,
14  transacting, conducting, continuing, doing, or carrying on a business have business licenses."
15  Section 7102(c) lists activities which do not constitute transacting business within the meaning of
16  11 GCA § 7102(a).  Similarly, 11 GCA § 70103 (e) defines what is "engaging in, transacting,
17  conducting, continuing, doing or carrying on a business."

18       Defendants are foreign corporations.  Are their activities within Guam such that service of
19  process upon them may be made upon the DRT Director?

20       Under corporate law, a corporation is a person.  It is clear under Guam law that a foreign
21  corporation may engage in certain activities and yet not be considered as "transacting business within
22  Guam" or "engaging in, transacting, conducting, continuing, doing or carrying on a business" within
23  Guam.  These activities, among other activities, include the following:

24       •    Maintaining, defending, or settling a proceeding.  *See* 11 GCA §§ 7102(c)(1) and
25            70103 (e)(1);

26       •    Holding meetings of the board of directors or shareholders.  *See* 11 GCA
27            §§ 7102(c)(2) and 70103(e)(2);

28       •    Maintaining bank accounts.  *See* 11 GCA §§ 7102(c)(3) and 70103(e)(3);

1        •      Effecting sales through independent contractors. *See* 11 GCA §§ 7102(c)(5) and

2              70103(e)(5);

3        •      Soliciting or procuring orders, whether by mail or through employees or agents, or

4              otherwise, where those orders require acceptance outside of Guam before they

5              became binding contracts. *See* 11 GCA §§ 7102(c)(6) and 70103(e)(6);

6        •      Owning without more, real or personal property. *See* 11 GCA §§7102(c)(9) and

7              70103(e)(9); and

8        •      Transacting business in interstate commerce. *See* 11 GCA §§7102(c)(11) and

9              70103(e)(11).

10     Defendants assert that they were not transacting business in Guam so that their activities do

11 not trigger the application of 18 GCA § 7113(e). They argue that Majestic Blue engaged a broker

12 in London to solicit and negotiate its insurance policy with them. *See* Eivindsen Decl. at ¶3, ECF

13 No. 27. Defendants also state that they underwrote and executed the policy in Norway and delivered

14 the Certificate of Entry to Majestic Blue's broker, Besso, in London. Thus, Defendants contend that

15 it was not "transacting business in Guam" as set forth in Section 70102 or "engaging in, transacting,

16 conducting, continuing, doing or carrying on a business" within Guam as set forth in Section 70103.

17     The court agrees. The court finds that Defendants engaged in an activity exempt from the

18 application of the statute because Defendants solicited or procured the insurance contract with

19 Majestic Blue which required that the policy be accepted outside of Guam before it became a binding

20 contract. Thus, service of process upon the DRT Director under 18 GCA § 7113(e) was not proper.

21     Plaintiff also contends that service upon Defendants was proper because it served Elyze

22 Iriarte with the summons and complaint. Plaintiff asserts that service on Ms. Iriarte was proper

23 because she officially serves as Defendants' correspondent and she was designated by them in their

24 website as their agent for notice in Guam.

25     Defendants respond to Plaintiff's arguments by pointing out that the website that lists their

26 correspondents also set forth Correspondent Guidelines which state that the firms that appear on the

27 list are not agents of the Club. More importantly, a correspondent has no authority to bind the Club

28 unless specifically approved by an authorized member of the Club or staff of the Club.

Ms. Iriarte has also filed a Declaration that states she has not been authorized by Defendants to accept service of process on their behalf in this case. Iriarte Decl. at ¶¶3-4, ECF No. 29. She also states that Majestic Blue did not solicit legal or correspondent services from her with respect to the sinking of the Majestic Blue vessel. _Id._ at ¶5.

Based upon the response by Defendants and Ms. Iriarte's Declaration, the court finds that service of the complaint and summons upon Ms. Iriarte was not proper service upon the Defendants. Although Plaintiff has not satisfied its burden of demonstrating effective service, the court has discretion to either dismiss or retain the action. _See Stevens v. Sec. Pac. Nat'l Bank_, 538 F.2d 1387, 1389 (9th Cir. 1976).[3] The court finds that there is a reasonable expectation that Plaintiff will ultimately be able to serve the Defendants properly. Accordingly, in lieu of the dismissal sought by

---

[3] This Ninth Circuit case cites to the Federal Practice and Procedure treatise in support of this proposition. As to the court's discretion on this matter, the treatise states:

> The federal courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant. Of course, the difference between the two results is not substantial. In the case of a dismissal, the plaintiff merely reinstitutes the action and has process served again, making sure that the earlier defect in the summons or the mode of service has been corrected. When process is quashed, only the service need be repeated.
>
> . . . **[S]ervice generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly**. Furthermore, the court may use its discretion not to dismiss the action in those cases in which it is not clear whether proper service has been made; the simplest solution in this situation is to quash process and allow the plaintiff another opportunity to serve the defendant. When quashing process, courts have the discretion to order conditions, including time constraints, within which the plaintiff may make a second attempt at service.
>
> The reluctance of the courts to dismiss an action when there is a possibility that effective service will be completed is understandable inasmuch as the dismissal would be without prejudice and probably would lead to the reinstitution of the suit by the plaintiff. Thus, dismissal needlessly burdens the parties with additional expense and delay and postpones the adjudication of the controversy on its merits.

5B Charles Alan Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 1354 (3rd ed. 2004) (footnotes omitted and emphasis added).

1 the Defendants, the court will exercise its discretion and recommend that Plaintiff's initial attempts

2 to serve Defendants be quashed and that Plaintiff be given a reasonable time to properly effect

3 service on the Defendants.

4 **B.      Rule 12(b)(2) Motion - Whether the court has personal jurisdiction over Defendants.**

5          With respect to personal jurisdiction, the burden is on the Plaintiff to show that personal

6 jurisdiction exists. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  In evaluating a

7 motion to dismiss for lack of personal jurisdiction, "[t]he court may consider evidence presented in

8 affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe*

9 *v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted).

10         Defendants argue that the court has no personal jurisdiction over them because it has no

11 contacts with them.

12         Guam has a long arm statute and it is found in 7 GCA § 14109.  The statute allows the courts

13 of Guam to exercise jurisdiction on any basis which is consistent with the Organic Act of Guam or

14 the U.S. Constitution.  Under the Due Process Clause, a court has jurisdiction over a defendant if

15 the defendant has a continuous and systematic presence in Guam (general jurisdiction) or the

16 defendant has minimum contacts with Guam such that the exercise of jurisdiction "does not offend

17 traditional notions of fair play and substantial justice" (specific jurisdiction. *Int'l Shoe Co. v.*

18 *Washington*, 326 U.S. 310, 316 (1945).  Defendants contend they have no relevant contacts with

19 Guam and therefore, the complaint should be dismissed.

20         Applying the Due Process Clause, the issue[4] herein is whether Defendants' contacts with

21 Guam are of such quality and nature that they could reasonably expect to be haled into a court in

22 Guam. *World-Wide Volkswagen*, 444 U.S. at 297 (1980).

23         Paragraph 6 of Complaint alleges Defendants' contacts with Guam:

24          Defendants are subject to the  personal jurisdiction, specifically, of the Court
          under Guam Code Ann. § 14109 because it does not violate the Organic Act or
25         the U.S. Constitution as  Skuld purposefully directed its activities to Guam,
          consummated the transaction of insuring the  insured within Guam and

26

27         _____

          [4]It appears to the court that Plaintiff does not argue that the court has general jurisdiction over
28 Defendants. *See* Opp'n at 9, ECF No. 39 .

1
2
3
4
5
6

purposefully availed itself of the privilege of conducting activities in the forum of Guam, thereby invoking the benefits and protections of its laws when they (a) insured Majestic Blue Fisheries, LLC, an entity with its principal place of business in Guam 1026 Cabras Highway, Ste. 110 96925 Piti, Guam, (b) issued the policy of insurance in Guam, (c) authorized the filing of two (2) Letters of Undertaking in the District Court of Guam to first cover the claims of all claimants in the Limitation Action filed in Guam under the benefits and protection of the Guam court and then to stay the execution of a judgment for Costs rendered in the Limitation Action by this Court in Guam, (d) and ultimately failed to cover the judgment rendered in Guam against their insured as required, thereby breaching the contract in whole or in part in Guam.

7   Compl. at ¶6, ECF No. 1.

8        Courts apply a three-part test for analyzing a claim of specific personal jurisdiction:

9
10        (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

11
12        (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

13        (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
14

15   Boschetto, 539 F.3d at 1016 (quotation omitted).

16        1. Purposeful Availment or Purposeful Direction

17        To satisfy the first prong of the test, a defendant must have either purposely availed itself of

18   the privilege of conducting business activities within the forum or purposely directed activities

19   toward the forum. Panavision v. Toeppen, 141 F. 3d 1316, 1320 (9th Cir. 1988). These activities

20   generally take the form of an action by a defendant within the forum that invokes the benefits and

21   protection of the forum. Schwarzenegger v. Fred Martin Motor Co.., 374 F.3d 797, 802 (9th Cir.

22   2004). Plaintiff must show that defendant engaged in some form of affirmative conduct allowing

23   or promoting the transaction of business within the forum state. Gray & Co. v. Firstenber Mach.

24   Co., 913 F.2d 758, 760 (9th Cir. 1990).

25        In her complaint, Plaintiff asserts certain specific acts which she alleges give rise to the

26   court's personal jurisdiction over Defendants. These include:

27        1. Defendant Assuranceforeningen Skuld "consummated the transaction of insuring"

28   Majestic Blue within Guam. Majestic Blue had its principal place of business in Guam at 1026

Cabras Highway, Ste 110, Piti, Guam.

    2. Defendant Assuranceforeningen Skuld issued the policy of insurance in Guam.

    3. Defendant Assuranceforeningen Skuld issued a letter of undertaking in the District Court of Guam to cover the claim of all claimants in the Limitation (CV10-00032).

    4. Defendant Assuranceforeningen Skuld issued a letter of Undertaking in the District Court of Guam to stay the judgment for costs in the Limitation Action (CV11-00032).

    Plaintiff in her opposition memorandum also points out that Assuranceforeningen Skuld's own website "offers advice to vessels located in Guam regarding vessel response plans." Opp'n at 13, ECF No. 39.

    Defendants argue that the only possible relevant contact with Guam is the fact that they contracted to provide insurance to Majestic Blue, a resident of Guam. Defendants state that Plaintiff's allegation that they delivered an insurance policy to Guam is false. Defendants also point out that Majestic Blue employed a broker in London to "act as its agent to negotiate, purchase, and accept delivery of the policy in London" and Majestic Blue made all of its payments to Defendant Assuranceforeningen Skuld through its London broker. *See* Hare Decl. at ¶¶ 5-6 and Eivindsen Decl. at ¶¶ 3-5.

    Defendants contend that Assuranceforeningen Skuld's contract with Majestic Blue, standing alone, cannot form the basis for personal jurisdiction, citing *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985).

    In *Farmers Ins. Exch v. Portage La Prairie Mut. Ins. Co.*, 907 F. 2d 911 (9th Cir. 1998), Farmers Insurance brought an action against a Canadian insurer for bad faith and breach of contract. The trial court dismissed the action based on lack of personal jurisdiction over Portage, the Canadian insurer. The Ninth Circuit court reversed.

>     The precedent cited by Portage is not controlling. In *Davis*, 861 F.2d at 1161, and *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1247 (9th Cir.1984), the forum choice was the result of the plaintiff's unilateral change of residence after the occurrence of the tortious event giving rise to the litigation. Here, the forum was the situs of the accident. Unlike *Davis* and *Hunt*, the forum in this case had a substantial connection to the litigation.
>     We recognize that a minority of state courts have concluded that the Supreme Court's decision in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), precludes the exercise of

personal jurisdiction over an insurer whose only contact with the forum is the issuance of the policy. *See Meyer v. Auto Club Ins. Assoc.*, 492 So.2d 1314, 1316 (Fla.1986); *cf. United Farm Bureau Mut. Ins. v. United States Fidelity & Guar.*, 501 Pa. 646, 462 A.2d 1300 (1983). In *World–Wide Volkswagen*, the Court held that the sale of cars by New York local and regional distributors did not indicate a willingness to be sued in Oklahoma where the purchaser had subsequently driven the car. "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." 444 U.S. at 295, 100 S.Ct. at 566.

Unlike the automobile sellers in *World–Wide Volkswagen*, automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states. *See Rossman*, 832 F.2d at 286. Thus litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer. Moreover, unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its "product"—the indemnification and defense of claims—will travel.

We agree with the Fourth Circuit in *Rossman*. Portage's territorial policy limit included Montana within its scope. Portage controlled its own amenability to suit. We therefore hold that Portage purposefully availed itself of the Montana forum when it contracted to indemnify and defend claims arising there.

*Farmers Ins. Exch.*, 907 F.2d at 914.

Defendants also argue that the court cannot consider the Letters of Undertaking filed in the District Court of Guam because they occurred subsequent to the event giving rise to Plaintiff's claim, citing *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

Defendants' reliance on *Steel* is misplaced. In *Steel*, the former spouse of a serviceman sued for a declaratory judgment as to the relative priority of two state court judgments of divorce. The former spouse sought to compel the United States to pay her a portion of her ex-husband's military retirement benefits, pursuant to a California decree. The trial court granted defendant's motions to dismiss, and an appeal was taken. The Court of Appeals held that: (1) the serviceman had sufficient minimum contacts with California that the court could constitutionally exercise personal jurisdiction over him, but (2) the Federal Uniformed Services Former Spouses' Protection Act did not waive the federal Government's sovereign immunity from suit. Thus, the Ninth Circuit Court affirmed in part, reversed in part, and remanded.

The Court of Appeals in *Steel* quoted from the record an exchange between the trial court and Plaintiff's attorney. The trial court concluded that there was insufficient minimum contacts because the former spouse's action was not simply an enforcement of a divorce decree but "a new dispute" in which the court was asked to take personal jurisdiction over the defendant former husband. In

1    response to a question from Plaintiff's counsel, the court confirmed that its ruling on the question

2    of personal jurisdiction was based upon facts that existed when the complaint was filed. Thus, the

3    trial court ruled that the declaratory judgment action constituted a "new dispute" for which the

4    timing of minimum contacts was later than the divorce proceedings that led to the conflicting

5    judgments. In reversing, the Court of Appeals stated:

> A recent Ninth Circuit case further supports this analysis. In *Thompson v. Thompson*, 798 F.2d 1547 (9th Cir.1986), *cert. granted*, 479 U.S. 1063, 107 S.Ct. 946, 93 L.Ed.2d 996 (1987), the court found personal jurisdiction in a proceeding that was "directly related" to an earlier state court action for which there was personal jurisdiction. *Id*. at 1549. The defendant's contacts with the state were evidenced by her filing of divorce and child custody proceedings. There was personal jurisdiction in the later proceeding against her under the Parental Kidnapping Protection Act because that action "is directly related to [defendant's] original California custody action." *Id*. While the contacts present in *Thompson* were stronger, the causal link is identical to the case at hand.
>
> Applying the test from *Data Disc* to the facts alleged by the parties in their affidavits, we find that the district court had jurisdiction over Dean. The operative facts concerning this conflict of judgments arise out of the Steel's marriage, subsequent separation, and their suits for divorce. Thus, the same facts that the California court examined in asserting jurisdiction over Dean in the 1978 divorce proceeding are the facts that confer personal jurisdiction here. 813 F. 2d, at 1550.

15    *Steel*, 813 F.2d at 1550.

16        In *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F. 3d 1199 (9th Cir.

17    2006), Yahoo, a California Internet service provider, sued two French associations who had obtained

18    an interim order from a French court which required Yahoo to block French citizens' access to Nazi

19    material displayed or offered for sale on Yahoo's United States site. Yahoo sought a declaration that

20    the order was not enforceable in the United States. Prior to obtaining the French court order,

21    defendants sent a cease and desist order to Yahoo, demanding that Yahoo conform its behavior to

22    the commands of the French court and defendants also served process on Yahoo in California. The

23    Ninth Circuit Court of Appeals found that these contacts with the forum provided personal

24    jurisdiction, namely; (1) the cease and desist letter; (2) service of process on Yahoo in California.;

25    and (3) obtaining the interim orders in France directing Yahoo to take actions in California.

26        Defendants also argue that the two Letters of Undertaking occurred subsequent to the event

27    giving rise to Plaintiff's claim. The court finds that Defendants are incorrect in that regard. The

28    court concludes that the event giving rise to the action which is now before it was not based upon

1   the sinking the Majestic Blue but the failure of Majestic Blue to pay the judgment entered against

2   it in CV11-00034. Thus, the Letters of Undertaking filed by Assuranceforeningen Skuld in CV10-

3   00032 and CV 11-00032 preceded the failure by Majestic Blue to pay its judgment in CV11-00034.

4        Thus, with regard to Defendants the court finds that Defendants have had the following

5   contacts with Guam:

6        1. On February 20, 2010, Assuranceforeningen Skuld provided insurance to Majestic Blue,

7   whose principal place of business was 1026 Cabras, Highway, Ste 110, Piti, Guam.

8        2. On December 9, 2010, in CV10-00032, Assuranceforeningen Skuld filed with this court

9   a Letter of Undertaking in the amount of $33,500.00, which represented the value of the Majestic

10  Blue in the Limitation action.

11       3. On April 24, 2015, Assuranceforeningen Skuld, in CV11-00032, filed a Letter of

12  Undertaking in the amount of $39,756.52, for security of the judgment for costs entered against

13  Majestic Blue.

14       Based on the above acts, the Defendants engaged in some form of affirmative conduct

15  allowing or promoting the transaction of business with Guam, and thus these contacts satisfy the

16  purposeful availment or purposeful direction prong of the three-part test.

17       2.    <u>Claim Arises Out of Forum-Related Activities</u>

18       Defendants contend that Plaintiff's claim does not arise out of Defendants' forum related

19  activities. In the first instance, the insurance policy was negotiated and delivered in London.

20  Plaintiff's claim is a direct action against Defendants seeking to enforce the insurance contract.

21  Defendants further say that Defendants' breach of the agreement occurred in Norway, where

22  Assuranceforeningen Skuld has its principal place of business. Hence, Plaintiff's claim does not

23  arise from or relate to Defendants' alleged contacts with Guam.

24       Plaintiff argues that she has met this test and cites *Farmers*. In *Farmers*, the Court of

25  Appeals stated:

26       Farmers brought suit as a third-party beneficiary to the promise to provide
         coverage (in Montana) and for bad faith refusal to settle. An action arises out
27       of contacts with the forum if, "but for" those contacts, the cause would not
         have arisen. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir.1990).
28       But for Portage's alleged breach of promise to defend its insured for injuries

1  caused in Montana, this suit would not have arisen. The second prong
2  is satisfied.

3  *Farmers Ins. Exch.,* 907 F. 2d, at 914.

4      In this case, Defendant Assuranceforeningen Skuld issued an insurance policy to Majestic

5  Blue whose principal place of business is in Guam. In its policy insuring the vessel, it acknowledged

6  that the vessel sailed or would sail within the Pacific Ocean and included this geographic area within

7  its coverage. Plaintiff alleges that Majestic Blue has failed to pay the judgment against it, thus

8  resulting in this litigation. The court concurs with Plaintiff; but for Defendants' breach of the

9  indemnity insurance policy by refusing to pay the judgment in CV11-00034, this suit would not have

10 arisen. Thus, the second prong is satisfied.

11     3.    <u>Reasonableness of Exercise of Jurisdiction</u>

12     The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction

13 must comport with fair play and substantial justice. *Panavision*, 141 F.3d at 1320.

14 In determining whether the exercise of jurisdiction over a nonresident defendant
comports with "fair play and substantial justice," we must consider seven factors:
15 (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum; (3) the extent of conflict
16 with the sovereignty of the defendants' state; (4) the forum state's interest in
adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;
17 (6) the importance of the forum to the plaintiff's interest in convenient and effective relief;
and (7) the existence of an alternative forum. *Paccar*, 757 F.2d at 1065. None of
18 the factors is dispositive in itself; instead, we must balance all seven. *Roth v. Garcia
Marquez*, 942 F.2d 617, 623 (9th Cir.1991).
19

20 *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). There is a

21 presumption that the exercise of jurisdiction is reasonable when the first two prongs of the specific

22 jurisdiction test have been met. *Schwarzenegger*, 374 F.3d at 802.

23     a.    <u>The extent of Defendants' purposeful interjection into Guam</u>

24     As noted by the court in *Core-Vent Corp.*, *supra*, the smaller the degree of intervention there

25 is by Defendants into the forum, the less jurisdiction is to be anticipated and the less reasonable it

26 would be for the forum to exercise jurisdiction. Herein, the court has noted at least three contacts

27 by Defendants with Guam. Furthermore, in executing its Letters of Undertaking, Defendant

28 Assuranceforeningen Skuld has sought the protection of Guam's laws. This factor favors Plaintiff.

b.    The burden on the Defendants in defending in Guam

Defendants argue that a very significant burden would be placed upon them if they were forced to litigate in Guam.  Defendants state that all their representatives are in Norway, which is on the other side of the world from Guam.  There are no direct flights from Norway to Guam and traveling to Guam from Norway crosses eight or nine time zones.

Plaintiff argues that it is not too inconvenient for Defendants to litigate in Guam.  She states that "Skuld is a multi-national billion dollar corporation" and is "an international insurance company that has sufficient monetary resources to litigate" the case in Guam.  In addition, Skuld has funded and coordinated the defense of the two underlying lawsuits (CV11-00032 and CV11-00034) which has led to the third case before the court.

The court notes that Norway's distance from Guam necessarily provides some inconvenience to Defendants.  The court also notes that there are very few direct flights to Guam.  Even in the continental United States, there are no direct flights to Guam.  Honolulu, Hawaii to Guam provides the only domestic flight to Guam other than flights from the neighboring islands of Saipan and Rota.  The only direct international flight may come from the Japan, Hongkong, South Korea, Philippines, Taiwan, Australia, the Federated States of Micronesia and Palau.  Thus, any potential non-resident party who litigates in Guam, who does not reside within the above places, is necessarily inconvenienced because there are no direct flights to Guam.  Guam is not an unknown forum to Defendants.  Defendants have some familiarity with Guam's attorneys in that it has designated certain Guam attorneys as correspondents in its website to assist its club members with issues in this geographical area.  Defendant Assuranceforeningen Skuld has used the services of David Ledger, a Guam licensed attorney, to act as its attorney in fact with respect to the two Letters of Undertaking filed by with this court.  In light of the above, it does not appear that the inconvenience to Defendants is such that it constitutes a deprivation of due process.  This factor favors Plaintiff.

c.    The extent of conflict with the sovereign of Norway

Defendants are alien defendants.  When "the nonresident defendant is from a foreign nation, rather than from another state in our federal system, the sovereignty barrier is higher undermining the reasonableness of personal jurisdiction." *Pacific Atlantic Trading Co., Inc., v. M/V Main Exp.*,

1    758 F. 2d 1325, 1330 (9th Cir. 1985).

2    In determining how much weight to give this factor, courts have focused on the "presence

3    or absence of connections to the United States in general, not just to the forum state. Sovereignty

4    concerns weigh more heavily when the defendants have no United States-based relationships."

5    *Core-Vent Corp*, 11 F.3d at 1489. Plaintiff alleges in its opposition that Assuranceforeningen Skuld

6    has an office in New York. Opp'n at 16, ECF No. 39. This factor favors Defendants.

7    d.    The forum state's interest in adjudicating the dispute

8    Guam has a strong interest in making sure that its insured are protected by policies of

9    insurance issued by insurers. It also has a strong interest in collecting judgments which emanate

10   from its courts. This factor favors Plaintiff.

11   e.    The most efficient judicial resolution of the controversy

12   In evaluating this factor, courts look primarily at where the witnesses and the evidence are

13   most likely to be located. The Plaintiff has filed suit against Defendants to recover on a judgment

14   obtained against their insured, Majestic Blue, which has failed to pay said judgment. The record of

15   these proceedings are in Guam. The insurance policies are located in Guam and Norway. Majestic

16   Blue's files and its counsel's files are in Guam. Defendants' witnesses (their corporate

17   representatives) are located in Norway. This factor slightly favors Defendants.

18   f.    The forum's importance to the plaintiff's interest in convenient and effective

19        relief

20   Generally, courts have given insignificant weight to this factor. Since Plaintiff has filed her

21   action in Guam, she has indicated that it would be more convenient for her to litigate this action in

22   Guam than to do so in Norway.

23   Defendants contend, however, that Guam is an ineffective forum since a judgment obtained

24   here would be unenforceable in Norway and would therefore not provide Plaintiff with any effective

25   relief. This factor favors Plaintiff.

26   g.    The existence of an alternative forum.

27   With regard to this factor, Defendants contend that Plaintiff bears the burden of proving the

28   unavailability of an alternative forum, citing *Core-Vent*, supra. Plaintiff, however, contends that

1  there is a split of authority on this issue, citing *Dole Food Co., Inc. v. Watts*, 303 F. 3d 1104, 1116

2  (9th Cir. 2002). Plaintiff contends that this factor becomes an issue only when Defendants show that

3  jurisdiction within Guam is unreasonable.

4        The courts which place the burden on plaintiff to prove the unavailability of an alternative

5  forum look solely to whether plaintiff can file an action in another forum against defendants.

6  However, in addressing that issue, the courts have sometimes sought to determine whether the

7  alternative forum provides an "adequate" forum for plaintiff's action. That inquiry is an issue that

8  may be more appropriately addressed in the *forum non conveniens* dismissal argument. Based upon

9  the Declaration of Gaute Gjelsten, a licensed attorney, practicing maritime law in the Kingdom of

10  Norway and specializing in international shipping and offshore law, Plaintiff is able to file an action

11  in Norway. Thus, there exists an alternative forum. This factor favors Defendants.

12        In considering the relevant factors above, the court finds that four of the factors favor

13  Plaintiff and three factors favor the Defendants. The court also finds that exercising jurisdiction

14  against Defendants would be reasonable since Defendants have had contacts with this forum. They

15  have utilized Guam attorneys in posting their Letters of Undertaking with the court and in that

16  process have sought the protection of Guam's laws. Thus, it would be reasonable for this court to

17  exercise jurisdiction over the Defendants.

18        The court concludes that the three-part test for specific personal jurisdiction has been

19  satisfied. Accordingly, the court recommends the Chief Judge deny Defendants' motion to dismiss

20  for lack of personal jurisdiction.

21  **C.   Rule 12(b)(6) - Whether Plaintiff states a claim for direct action under Guam law.**

22        Defendants next move to dismiss the complaint because Plaintiff cannot state a claim for

23  direct action under Guam law. Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to

24  state a claim upon which relief can be granted. Plaintiff has filed a Complaint against Defendants

25  pursuant to 18 GCA § 18306 for the failure of their insured, Majestic Blue, to pay a judgment

26  rendered against Majestic Blue in CV11-00034. The relevant statutes are as follows:

27        § 18305. Liability Policy: Direct Action.
         On any policy of liability insurance the injured person or his heirs or representatives
28       shall have a right of direct action against the insurer within the terms and limits of the

Amy Hill, etc. v. Assuranceforeningen Skuld (Gjensidig), et al., Civil Case No. 15-00025
Report and Recommendation                                                                 page 17 of 25

1     policy, whether or not the policy of insurance sued upon was written or delivered in
2     Guam, and whether or not such policy contains a provision forbidding such direct
      action, provided that the cause of action arose in Guam. Such action may be brought
3     against the insurer alone, or against both the insured and insurer.

4     § 18306. Liability Policy: Insolvency or Bankruptcy
      No policy of liability insurance shall be issued or delivered in Guam, unless it
5     contains provisions to the effect that the insolvency or bankruptcy of the insured shall
      not release the insurer from the payment of damages for injuries sustained or loss
6     occasioned during the term of such policy, and that in case execution against the
      insured is returned unsatisfied in any action brought by the injured person or his
7     heirs, because of such insolvency or bankruptcy, an action may be maintained by the
      injured person or his heirs or representatives against such insurer within the terms
8     and limits of the policy for the amount of the judgment not exceeding the amount of
      the policy.

9     22 GCA §§ 18305 and 18306.

10          Defendants argue that Section 18306 does not create a right of action independent of Section

11    18305. Defendants also argue that Plaintiff does not specifically allege that Majestic Blue is

12    insolvent.

13          Defendants first argue that Plaintiff fails in her complaint because the policy which is the

14    subject matter herein was not "issued or delivered in Guam." In addition, Defendants argue that

15    Plaintiff did not plead that the policy was issued or delivered in Guam. Moreover, Defendants allege

16    that they never dealt with Majestic Blue in the issuance of the policy. Defendants allege that the

17    policy was negotiated by Majestic Blue's London agent and it was issued in Norway and delivered

18    to Majestic Blue's agent in London. Thus, the policy was not delivered or issued in Guam.

19          Second, the Defendants argue that Plaintiff has failed to allege that the accident occurred in

20    Guam and that causes of action that do not arise in Guam do not give rise to direct actions claims

21    in Guam. 22 GCA § 18305.

22          Plaintiff argues that her allegation in Paragraph 6 of the Complaint that Defendant

23    Assuranceforeningen Skuld issued a policy in Guam to Majestic Blue is a question of fact that should

24    be accepted as true for purposes of the motion to dismiss. The affidavits produced by Defendants,

25    however, allege that Majestic Blue's policy was issued in Norway. Plaintiff has not produced a

26    counter affidavit to preserve the matter as a factual issue that needs to be determined by the fact

27    finder at trial.

28          Plaintiff also argues that the place of the delivery of the policy is disputed. Although a broker

1   did take part in the negotiations between Majestic Blue and Assuranceforeningen Skuld, it is

2   Plaintiff's position that delivery of the policy did not occur until the "Certificate of Entry" arrived

3   in Guam at Majestic Blue's base of operations.  Plaintiff further argues that Defendants have not

4   presented any evidence which shows an agency relationship between Majestic Blue and the London

5   broker.  Defendants cite to a number of cases, including a California case, and argue that the law

6   generally recognizes that the location of a broker that receives delivery of a policy controls absent

7   special circumstances.

8        The difference between an insurance agent and an insurance broker and the relationship

9   between an insurance broker and the insured and the insurer was discussed in a California case,

10  *Marsh & McLennan v. City of Los Angeles*, 62 Cal. App. 3d 108 (1976).  The court stated:

11           Our view is that appellant, in its capacity of insurance broker, is an
12       independent contractor, not an agent of the insurer, and therefore, does not share the
         exemption of insurance agents.
             . . . An independent insurance broker is not an agent of the insurer, but rather
13       is an agent of the insured. (Ins. Code, § 33; *Solomon v. Federal Ins. Co.*, 176 Cal.
         133, 138, 167 P. 859; *Parrish v. Rosebud Mining & Milling Co.*, 140 Cal. 635, 74 P.
14       312; *Detroit Trust Company v. Transcontinental Ins. Co.*, 105 Cal. App. 395, 287 P.
         535; 16 Appleman, Insurance Law and Practice, §8730.)
15           In *Maloney v. Rhode Island Ins. Co.*, 115 Cal. App. 2d 238, 244, 251 P.2d
         1027, the court stated that an insurance broker is generally an agent of the insured
16       and not of the insurer.  A broker may become an agent for the insurer but only for the
         purpose of delivering policies and collecting premiums thereon; the agency
17       relationship between broker and insurer terminates upon transmittal of the premium
         to the insurer.

18

19  *Marsh & McLennan*, 62 Cal. App. 3d at 117.

20       As Defendants' affidavits have shown, Skuld delivered the policy of insurance to the London

21  agent in London.  Defendants allege that the broker was not their agent but was the agent for

22  Majestic Blue.  In light of Plaintiff's argument that delivery did not occur until the policy of

23  insurance was delivered to Majestic Blue and taking into consideration the above case, the court

24  finds that the question whether the policy was delivered in Guam or not presents a factual issue that

25  must be determined at trial.

26       Defendants also argue that Plaintiff has made no allegation that Majestic Blue was insolvent.

27  Section 18306 requires that execution be made against an insured and returned unsatisfied before

28  a cause of action arises under Section 18306.  Plaintiff has made no such allegation.  It thus appears

1    that Plaintiff has not met the necessary threshold to have standing to commence the action.

2            The court also takes note that during oral arguments, it questioned whether the action was

3    ripe for adjudication. The court noted that its ruling denying Majestic Blue's petition for exoneration

4    or to limit its liability in CV11-00032 is on appeal to the Ninth Circuit Court of Appeals and remains

5    pending there, and Plaintiff's jury award in CV11-00034 has also been appealed by Majestic Blue.

6    That case also remains pending on appeal with the Ninth Circuit Court of Appeals.

7            Plaintiff's ability to recover on its judgment is conditioned upon (1) a favorable ruling from

8    the Court of Appeals in CV11-00034 and (2) another favorable ruling in CV11-00032.  Section

9    18306  envisions a suit to compel the payment of a judgment that is final in all respects.  The

10   judgment which Plaintiff attempts to enforce is not final in all respects   How can the court order

11   Defendants to pay the judgment in CV11-00034 if the court is uncertain as to its finality?  Prudence

12   will dictate that the judgment not be enforced since it is contingent upon the success of two pending

13   appeals within the Ninth Circuit Court involving Defendants' insured.  If Majestic Blue prevails in

14   the Limitations Action, then there is no judgment to be enforced against Defendants in CV11-00034.

15           The court believes that the matter is not ripe for adjudication because Plaintiff's judgment

16   is uncertain and the court cannot and should not impose judgment against Defendants on a matter

17   which is uncertain.

18   **D.      Whether dismissal is warranted based upon *forum non conveniens*.**

19           "A party moving to dismiss based on *forum non conveniens* bears the burden of showing[:]

20   (1) that there is an adequate alternative forum [;] and (2) that the balance of private and public

21   interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

22   A domestic plaintiff's forum choice is entitled to considerable deference, whereas a foreign plaintiff's

23   forum choice is entitled to less deference.  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir.

24   2000) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981).  Dismissals for *forum non*

25   *conveniens* are "to be employed sparingly" because the doctrine does not "compel[ ] plaintiffs to

26   choose the optimal forum for their claim." *Ravelo Monegro*, 211 F.3d at 514; *Dole Food Co.*, 303

27   F.3d at 1118.

28           The presumption in favor of the plaintiff's choice of forum may be rebutted through a clear

1  showing of facts which either: "(1) establish such oppressiveness and vexation to a defendant as to

2  be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent[;]

3  or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's

4  own administrative and legal problems." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524

5  (1947); *Ravelo Monegro*, 211 F.3d at 514. Whether such a showing has been made is determined

6  by an analysis of the so-called "private" and "public" interest factors.

7          1.      Whether there is an adequate alternative forum

8          Defendants must first demonstrate that an adequate alternative forum exists.  An alternative

9  forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other

10  jurisdiction offers a satisfactory remedy. *See Piper Aircraft*, 454 U.S. at 254 n.22.  Here, Defendants

11  assert that Norway is an adequate alternative forum because Defendants are subject to service of

12  process in Norway and Norway also permits direct actions against insurers. *See* Gjelsten Decl.[5] at

13  ¶¶12-13, ECF No. 26.

14          Plaintiff contends that Norway is not an adequate forum because Mr. Gjelsten's Declaration

15  stated that Plaintiff's direct action claim against Defendants "would be subject to any defenses which

16  [Defendants] had against a claim by Majestic Blue Fisheries." *Id.* at ¶12.  Plaintiff contends that

17  Mr. Gjelsten's Declaration leaves the "the impression . . . that there may be some defenses that could

18  preclude the resolution of this dispute on its merits in Norway." Opp'n at 24, ECF No. 39.

19          The court does not find Plaintiff's concerns meritorious since her suit would be subject to

20  all applicable defenses wherever her claim is litigated.  The court finds that Defendants have met

21  their burden of showing that Norway is an adequate alternative forum.

22          2.      Balancing of private and public interest factors

23          The second step in the *forum non conveniens* analysis is for the court to weigh the various

24  private and public interest factors. The private interest factors that the court considers in a *forum non*

25  *conveniens* analysis include: (1) the relative ease of access to sources of proof; (2) residence of the

26  _____

27          [5]  Gaute Gjelsten is an attorney licensed to practice law in Norway since 1998 and
specializes in international shipping and offshore law, including practicing maritime law in Norway.
28  Gjelsten Decl. at ¶1, ECF No. 26.

1    parties and witnesses; (3) availability of compulsory process for attendance of witnesses; (4) costs

2    of bringing willing witnesses and parties to the place of trial; (5) access to physical evidence and

3    other sources of proof; (6) enforceability of judgments; and (7) "all other practical problems that

4    make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508

5    (1947); *Contract Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990).

6        As for the first and fifth private interest factors, Defendants assert there are no sources of

7    proof in Guam since this case involves a claim under an insurance contract that was issued in

8    Norway and delivered to the London broker. Mem. P. & A. in Supp. of Mot. to Dismiss at 19, ECF

9    No. 24. Aside from the Amended Judgment entered against Majestic Blue in CV11-00034 by this

10   court, all other evidence concerning the insurance contract would appear to be maintained in Norway

11   or London.

12       With regard to the second through fourth private interest factors, the Defendants maintain

13   that the witnesses are located in Norway, Florida, Korea and London but not in Guam. *Id.* They

14   further assert that the plane trip from Florida (where Plaintiff and her lawyers reside) to Oslo is

15   shorter and cheaper than a trip from Florida to Guam. Pursuant to Rule 45(c)(1), the court's

16   subpoena powers is limited to within 100 miles of where a person resides, is employed or regularly

17   transacts business in person. There will certainly be some difficulty in securing evidence from

18   abroad, and thus the court concurs that these factors tend to favor the Defendants.

19       As for the sixth factor, Defendants assert that Norway will not recognize a Guam judgment

20   entered against them. In Mr. Gjelsten's opinion, "Norway will not recognize any judgment obtained

21   against [Defendants] in a direct action lawsuit brought in the District court of Guam or anywhere else

22   other than Norway (subject to the scope of the Lugano Convention 2007), and that, to enforce her

23   claim against [Defendants, Plaintiff] would have to commence a new proceeding or arbitration in

24   Norway and [Defendants] would not be bound by any judgment that was entered in the United

25   States." Gjelsten Decl. at ¶13, ECF No. 26. Plaintiff notes that Defendants did not present any

26   evidence regarding the enforceability of a Norwegian judgment in the United States, but the court

27   does not believe there would be any impediment in enforcing a foreign judgment here. Accordingly,

28   the sixth factor also favors the Defendants.

1       The seventh factor is a "catch-all" provision, and the Defendants have offered nothing else

2 for the court's consideration, so this factor is neutral.

3       In addition to the private interest factors, the public interest factors that the court considers

4 in a *forum non conveniens* analysis include: (1) the administrative difficulties flowing from court

5 congestion; (2) the local interest in having the matter decided locally; (3) familiarity with governing

6 law and avoidance of unnecessary problems in conflicts of law or application of foreign law; and (4)

7 the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co.*, 454

8 U.S. at 241 and 250; *Gilbert*, 330 U.S. at 508–09.

9       With regard to the first public interest factor, Defendants contend that it would be more

10 difficult to try this matter in Guam than Norway since both parties must travel to Guam versus only

11 one party having to travel if the trial were held in Norway. The Defendants appear to assert that both

12 jurisdictions are equally congested. While there is only one district judge – the Chief Judge – in

13 Guam who may preside over this matter, the court notes that the Administrative Office of the United

14 States Courts may assign another district judge to preside if the Chief Judge's trial schedule becomes

15 congested. Thus, this factor weighs in Plaintiff's favor.

16       As for the second factor, the Defendants contend that Guam has no interest in this dispute

17 because none of the parties reside in or have any connection to Guam. The court disagrees and

18 concurs with the Plaintiff that the District Court of Guam has an interest in ensuring the collectability

19 of its judgments. Additionally, Guam courts have an interest in enforcing contracts entered into by

20 resident corporations. Thus, this factor also favors the Plaintiff.

21       The third factor concerns the need to apply foreign law. As noted by the Defendants, the

22 contract at issue here contains a choice of law clause which specifies the law of Norway. The court

23 concurs that this factor favors the Defendants.

24       Finally, the last factor considers the burden on local juries. Defendants assert that since none

25 of the parties live in, reside in or have any connection to Guam, a Guam jury would have no interest

26 in this dispute. The court disagrees. The court notes that the F/V Majestic Blue sank in the middle

27 of the Pacific Ocean and Guam is the nearest U.S. territory to its sinking. The insurance policy at

28 issue here was issued to a Guam company, and this dispute involves the alleged failure of

1  Defendants to pay what it owes on behalf of its insured, a Guam company. Thus, Guam jurors would

2  have an interest in this dispute. This factor favors the Plaintiff.

3         Based on the above discussion, the private interest factors favor a Norway forum, but the

4  public interest factors would tend to favor Guam as a forum for this dispute. Because it is a close

5  call, the court can not disturb the Plaintiff's forum choice. Defendants have not shown it will suffer

6  such oppressiveness and vexation as to be out of all proportion to Plaintiff's convenience. Nor have

7  Defendants shown that a trial in Guam would be inappropriate because of considerations affecting

8  the court's own administrative and legal problems. Accordingly, the court recommends the Chief

9  Judge deny the motion to dismiss based on *forum non conveniens.*

10  **E.    Whether Plaintiff should be compelled to arbitrate her claim in Norway.**

11         Defendants' final argument is that Plaintiff should be compelled to arbitrate her claims in

12  Norway as provided in the New York Convention (the "Convention").[6]  Defendants note that the

13  insurance policy issued to Majestic Blue contained a provision that required arbitration in Oslo,

14  Norway.

15          Courts generally consider four factors in determining whether to enforce an arbitration

16  agreement under the Convention: (1) whether there is an agreement in writing within the meaning

17  of the Convention; (2) whether the agreement provides for arbitration in the territory of a signatory

18  of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not,

19  which is considered commercial; and (4) a party to the agreement is not an American citizen, or that

20  the commercial relationship has some reasonable relation with one or more foreign states. *Balen v.*

21  *Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (citing *Bautista v. Star Cruises*, 396

22  F.3d 1289, 1294 n.7.

23         As noted by Defendants, these four requirements are met in this case. First, there is an

24  agreement in writing within the meaning of the Convention. This written agreement is set forth in

25  Skuld's Statutes and Rules as appended as Exhibit B to the Plaintiff's Complaint. Second, the

26

27         [6] It is undisputed that the United States and Norway are signatories to the convention on the
Recognition and Enforcement of Foreign Arbitral Awards of 1958, also known as the "New York
28  Convention."

1     agreement provides for arbitration in Norway. *See* Rule 47.1 ("Unless otherwise agreed, any dispute

2     between the Association and . . . any party making a claim on the Association, shall be determined

3     by Arbitration in Oslo."), Statutes and Rules, Ex. B to Compl. ECF No. 1-2. Third, this agreement

4     arises out of an insurance contract which is a commercial legal relationship. Finally,

5     Assuranceforeningen Skuld is not an American citizen.

6         Although Plaintiff is not a signatory to the insurance policy between Defendants and Majestic

7     Blue, her Complaint asserts that she is a beneficiary of the insurance policy and that her claim is

8     based on These Statutes and Rules. *See* Compl. at ¶¶37-40 and 45. "Equitable estoppel precludes

9     a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens

10    that contract imposes. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted).

11    In the arbitration context, the Ninth Circuit has recognized the equitable estoppel doctrine has

12    generated two lines of cases.

13
14           Under the first of these lines, nonsignatories have been held to arbitration clauses
           where the nonsignatory knowingly exploits the agreement containing the arbitration
15           clause despite having never signed the agreement. Under the second line of cases,
           signatories have been required to arbitrate claims brought by nonsignatories at the
16           nonsignatory's insistence because of the close relationship between the entities
           involved.

17    *Id.* (internal quotations and citations omitted).

18        Because the Plaintiff as the nonsignatory is attempting to enforce the Statutes and Rules

19    against the signatory Defendants, it is the first line of cases that is relevant here, and the Plaintiff can

20    be held to the arbitration clause of the insurance policy.

21        The court has considered the public policy arguments raised by the Plaintiff and finds them

22    unpersuasive for the reasons set forth in the Defendants' Reply Brief. *See* Reply Br. at 13-15, ECF

23    no. 41. The court further finds that Defendants did not waive their right to compel arbitration.

24    Plaintiff has failed to meet her burden of proving Defendants took any act inconsistent with their

25    right to compel arbitration. Accordingly, the court recommends the Chief Judge stay this action and

26    compel Plaintiff to arbitrate her claim in Oslo, Norway as contemplated in the insurance policy. The

27    court's ruling is consistent with Congress' intent in the Federal Arbitration Act which reflects both

28    a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that

1   arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333(2011)

2   (internal quotation marks and citations omitted); *see also Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d

3   1052, 1057 (9th Cir. 2013) (*en banc*) ("The FAA was intended to overcome an anachronistic judicial

4   hostility to agreements to arbitrate, which American courts had borrowed from English common

5   law." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 n. 14

6   (1985))) and *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not

7   only placed arbitration agreements on equal footing with other contracts, but established a federal

8   policy in favor of arbitration, and a federal common law of arbitrability which preempts state law

9   disfavoring arbitration.").

**CONCLUSION**

11        The undersigned hereby recommends the following: (1) that the Chief Judge find that service

12   of process was improper, but in lieu of dismissal, the proper remedy would be to quash said service

13   and order Plaintiff to properly serve Defendants within a reasonable time period; (2) that the Chief

14   Judge deny the motion to dismiss for lack of personal jurisdiction; (3) with regard to the direct action

15   claim, that the Chief Judge stay these proceedings until the appeals pending in the Ninth Circuit in

16   CV 11-00032 and CV 11-00034 are resolved; (4) that the Chief Judge deny the motion to dismiss

17   based on *forum non conveniens*; and (5) that the Chief Judge stay this proceeding and compel the

18   Plaintiff to arbitrate her claim in Norway, but only after (a) proper service has been made on the

19   Defendants and (b) the pending appeals are resolved.

20        IT IS SO RECOMMENDED.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Apr 04, 2016**

**NOTICE**

**Failure to file written objections to this Report and Recommendation
within fourteen (14) days from the date of its service shall bar an aggrieved
party from attacking such Report and Recommendation before the
assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**